Day, J.
 

 A number of alleged errors are assigned as grounds for reversal of the judgment of conviction in this case, and they may be grouped under the following heads:
 

 (1) That the verdict is not responsive to the charge set forth in the indictment.
 

 (2) That the court erred in sustaining the demurrer of the state to the plea in abatement.
 

 (3) That the court erred in sustaining the demurrer to the plea in bar.
 

 (4) That the court erred in impaneling a jury, and in trying the case and submitting it to the jury and receiving a verdict on the 12th day of October, 1922; it being claimed that the same was a legal holiday.
 

 (5) That there was absolutely no evidence introduced with reference to the ability of Norman to provide for his minor child during the period covered by the indictment.
 

 (6) That Norman was a resident of West Virginia during the entire time laid in the indict
 
 *219
 
 ment, and was not subject to the jurisdiction of the common pleas court of Grallia county.
 

 As to the first contention that the verdict is not responsive to the issue tendered, it is necessary to give consideration to the section of the statute under which the proceeding was brought, and the nature thereof, and to the indictment and the form of the verdict.
 

 The purpose of the statute (Section 13008), and the sections
 
 in pari materia,
 
 is well stated in the language of Clark, J., in
 
 Seaman
 
 v.
 
 State,
 
 106 Ohio St., 177, 184, 140 N. E., 108, 110:
 

 “The intent of this legislation was to compel persons charged by law with the support of designated dependents to meet the full measure of their obligation to such dependents and society. The converse of the proposition may be stated that it was the purpose to relieve society of a burden that properly belonged to one charged by law with its obligation.”
 

 A history of the section is set forth in that opinion, and it is interesting to note that the original and basic section, 3140-2, Revised Statutes, passed April 16, 1890 (87 Ohio Laws, 216), was entitled “To prevent
 
 abandonment
 
 and pauperism.”
 

 It is quite true that on April 28, 1908 (99 Ohio Laws, 228), the Legislature repealed the original act of 1890 and passed an act entitled “An act to compel parents to maintain their children,” and, under the codification of February 14, 1910, this act of April 28, 1908, was carried into the codification as Sections 13008 to 13021, inclusive. The language with which the offense is charged in the indictment can leave no doubt that the
 
 *220
 
 charge is preferred under Section 13008, General Code. The material parts of the indictment follow:
 

 “The jurors of the grand jury of said county, on' their oaths, in the name and by the authority of the state of Ohio, do find and present that Herschell Norman, late of said county, on the first day of October in the year of our Lord one thousand nine hundred and nineteen, and from that day till the first day of September, 1920, at the county of Gallia aforesaid, unlawfully did neglect and refuse to provide one Naomi Norman with necessary and proper home, care, food and clothing; she, the said Naomi Norman, then and there being the legitimate child of him the said Herschell Norman under sixteen (16) years of age, to-wit, the said Naomi Norman being four years of age, and then and there living in the said county of Gallia and the said state of Ohio, and he, the said Herschell Norman, being the father of said child aforesaid duly charged by law with the maintenance thereof, and he, the said Herschell Norman, being then and there able, by reason of having property and by reason of personal services, labor and earnings, to provide said child aforesaid with necessary and proper home, care, food and clothing, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Ohio.’?
 

 A comparison of the language of the indictment and that of Section 13008, General Code, discloses that the indictment follows almost verbatim the language of the statute.
 

 Now Section 13009, General Code, provides for
 
 *221
 
 an offense of a father of a legitimate child under 16 years of age who “leaves, with intent to abandon, such child.” It cannot therefore be claimed that the indictment contains a charge under any other Section than 13008. It does not set forth the offense created by Section 13009. We do not understand that counsel claim anything different, but they do urge most strenuously that the verdict returned in the case at bar is not responsive to the charge contained in the indictment returned. The language of the verdict is as follows:
 

 “We, the jury in this case, duly impaneled and sworn and affirmed, find the defendant, Herschell Norman, guilty of abandoning legitimate child, in manner and form as he stands charged in the indictment.
 

 “C. T. Eobinson, Foreman.”
 

 Was this verdict responsive to the issue tendered? The language of the indictment is “unlawfully did neglect and refuse to provide one Naomi Norman with necessary and proper home, care, food, and clothing.” Was the verdict of the jury, that the defendant was “guilty of abandoning legitimate child in the manner and form as he stands charged in the indictment,” a responsive verdict to the charge in the indictment that he “unlawfully did neglect and refuse to provide said child,” and so forth?
 

 The word “abandon,” as defined in the Century Dictionary, is “to detach or withdraw one’s self from; leave; to desert; forsake utterly; as, to abandon duty,” and the word “neglect,” by the
 
 *222
 
 same authority, is defined as being “remiss in attention or duty toward.”
 

 It would therefore seem that, if the defendant had a duty to perform towards his minor child, Naomi Norman, he would be guilty of neglect of that duty if he should abandon the child in the manner and form set forth in the indictment. A verdict is sufficient in form if it decides the question in issue in such a way as to enable the court to intelligently base a judgment thereon.
 

 •Verdicts are to have a reasonable intendment, and a reasonable construction, and are not to be avoided unless from necessity originating in doubt of their import or irresponsiveness to the issues submitted, or unless they show a manifest tendency to work injustice.
 

 We are of opinion that Section 13008, General Code, charges a form of
 
 abandoning the duty
 
 that a parent owes to his child, and that the verdict returned in this case was responsive to the issues submitted by the trial judge.
 

 In the charge this language appears:
 

 “Two forms of verdict will be handed to you— one to be signed in the event you find the defendant guilty, and one to be signed in the event you find the defendant, not guilty.”
 

 This language is clear, concise, and readily understandable, and the verdict returned by this jury was undoubtedly responsive to the issue submitted to it; that is, was the defendant guilty or was he not guilty? The verdict was a general one and not special.
 

 “The verdict on the issue of not guilty is regulated by the oath which the jury is required to
 
 *223
 
 take, and that is to well and truly try and true deliverance make between the state and the prisoner.”
 
 Smith
 
 v.
 
 State,
 
 59 Ohio St., 350, 367, 52 N. E., 826, 829.
 

 Another objection to this verdict is. that the same is signed by one “O. T. Robinson, Foreman,” the name appearing on the panel, as drawn, as “Chas. Robinson.” It is of course not contended that the man drawn on the panel as “Chas Robinson” is in fact not the same individual, C. T. Robinson, who signed the verdict, and it is well established that, where the verdict is signed by a juror, a slight variance in the name signed from that by which the juror was sworn will not affect the verdict. 16 Corpus Juris, 1101. There is no showing in the record that the plaintiff in error was misled as to the identity of the juror, and we can see no prejudicial error in this regard.
 

 Entertaining the view that this verdict was responsive to the issue tendered, a reversal of the judgment below upon that ground must be denied. Reaching this conclusion, it is unnecessary for us to pass upon the question urged by counsel, that the objection to the verdict comes too late when raised for the first time in this court.
 

 The second and third grounds of alleged error involve a consideration of the sustaining of the demurrers by the trial court to the plea in abatement and to the plea in bar.
 

 At the outset of the discussion of the points raised by this ground of error, we are required to answer whether the suspension of sentence granted in cause No. 3317 (the first indictment) was under and by virtue of Section 13706, or un
 
 *224
 
 der and by virtue of Section 13010, General Code. The former section relates to tbe power of tbe court to suspend in misdemeanors or felonies, when tbe defendant has never before been imprisoned for crime, either in this state or elsewhere, and it appears to the satisfaction of the court or magistrate that the character of the defendant and the circumstances of the ease are such that he is not likely again to engage in an offensive course of conduct.
 

 The latter section, Section 13010, General Code, relates to the suspension granted for violation of Section 13008, and when construed in conjunction with Sections 13015 and 13019 relates to a suspension that is granted before sentence is passed, and, further, the mandatory language of Section 13010 requires that the defendant enter into a bond to the state of Ohio, conditioned that he will furnish “such child * * * with necessary and proper home, care, food and clothing, or will pay promptly each week for such purpose to a trustee named by such court,” etc.
 

 An examination of the record discloses that the suspension granted in this case was under and by virtue of Section 13706, for the entry provides:
 

 “And it appearing to the court that the defendant has never before been imprisoned for a crime, and it appearing to the satisfaction of the court that the character of the defendant and the circumstances of the case are such that he is not likely again to engage in an offensive course of conduct, and that the public good does not demand or require that he shall suffer the penalty imposed' by the law, the execution of the sentence herein
 
 *225
 
 imposed is suspended, and the defendant is placed on probation in.tbe manner provided by law.”
 

 It is true tbat tbe court added a condition tbat tbe defendant pay $1 per week to tbe clerk of tbe court for the use of bis minor child, but tbe court did not exact a bond as provided in Section 13010, and we are therefore constrained to tbe conclusion tbat the manifest intention of tbe court was to make tbe suspension under tbe general section (Section 13706), and tbat tbe same was not made under Section 13010, which section, when taken in connection with 13015, might have granted to the court a continuing jurisdiction. Tbe court bad, however, already passed sentence, and no bond was exacted, nor tendered by tbe defendant.
 

 We are therefore of opinion tbat tbe court of common pleas was right in sustaining tbe demurrer to tbe plea in abatement.
 

 Tbe plea in abatement raises tbe further point tbat Herscbell Norman bad filed an action for divorce and tbe custody of tbe child, Naomi Norman, in Pocahontas county, W. Ya.; that in said cause, on September 12, 1921, be was granted custody of such minor child by tbe said circuit court; tbat on tbe 19th day of April, 1922, Bertie Norman, tbe mother of Naomi Norman and wife of plaintiff in error, entered her appearance in said action in Pocahontas county, W. Ya., whereby the circuit court of Pocahontas county was given jurisdiction to dispose of tbe custody of the minor child. Granting all these facts to be true, for tbe sake of tbe argument, tbe indictment in tbe case - at bar charges an offense committed between the 1st day of October, 1919, and tbe 1st day of Septem
 
 *226
 
 ber, 1920, in the county of Gallia and state of Ohio. What transpired in the circuit court of Pocahontas county, W. Va., on the 12th day of September, 1921, and on the 19th day of April, 1922, would not be defensive to a crime committed in the state of Ohio a year before. Whether the courts of West Virginia have jurisdiction of the parties in the divorce case, and, incident thereto, the custody of the child, is not connected with the issue tendered under the present indictment, to-wit, Was the defendant guilty or not guilty of the offense of neglecting and refusing to support his minor child between the 1st of October, 1919, and the 1st of September, 1920?
 

 We are, therefore, of opinion that the demurrers to both plea in abatement and plea in bar were properly sustained by the common pleas court.
 

 The fourth assignment of error relates to the trial of the case on the 12th of October, 1922, which is made a holiday under the “Negotiable Instruments Acts” (Section 8301, General Code).
 

 It has been held in this state that it is not unlawful to hold common pleas court on Labor Day; that the judges having under Section 1533, General Code, fixed that day for the commencement of the term, an indictment returned by a grand jury impaneled on that day is valid.
 
 State
 
 v.
 
 Thomas,
 
 61 Ohio St., 444,
 
 56
 
 N. E., 276, 48 L. R. A., 459.
 

 It has also been held that the mere fact that the jury is required to consider a case for 48 hours, including part of Thanksgiving Day, does not render such proceedings invalid.
 
 State
 
 v.
 
 Young,
 
 
 *227
 
 73 Ohio St., 372, 78 N. E., 1138, affirming
 
 Young
 
 v.
 
 State,
 
 6 Ohio C. C. (N. S.), 53.
 

 It has generally been held that, in the absence of a statute containing a mandatory provision forbidding the judges of courts to hear and determine matters on a legal holiday, a judicial proceeding upon such day is not void. 10 L. R. A. (N. S.), 791, note, and cases cited.
 

 We are unable, upon search of the statutes, to find any provision of the General Code which in criminal cases renders void the proceedings of courts of October 12. Further, we fail to see in an examination of the record where there is any affirmative showing that the defendant objected to being tried upon that day. We find the following in the bill of exceptions:
 

 “By the Court: Are you ready for trial?
 

 “The Prosecutor: The state is ready.
 

 “By the Court: Is the defendant ready?
 

 “Mr. Johnston: The defendant is ready.”
 

 And thereupon the cause proceeded.
 

 The record failing to disclose affirmatively any objection on the part of the plaintiff in error to the conduct of the trial upon this day, we do not see how We can disturb the judgment of the courts below upon that ground.
 

 The fifth ground of error is that there was absolutely no evidence introduced with reference to the ability of Norman to provide for his minor child.
 

 The record shows that the defendant was a young man 25 or 26 years old at the time of the trial of this indictment; that he had worked with his father upon a farm; that he had worked in a sawmill; that he was about 180 pounds in weight;
 
 *228
 
 and that the jury might well have reached the conclusion that he was physically able to perform work sufficient to provide his minor child with “necessary home, food, care and clothing.” It is quite true that his physical appearance at the time of the trial, in the presence of the jury, might not have been proof of his condition during the period covered by the indictment, but the admissions by plaintiff in error to the witness Fraley, who accompanied plaintiff in error from West Virginia, at the time of his extradition, show that during part of the time he had been employed in West Virginia at various occupations, plaintiff in error pointing out to the witness where he had worked at a sawmill in the vicinity of Marlington, and further telling the witness of having worked at a tannery. So, when all the testimony and the circumstances of the case, as disclosed by the record, coupled with the fact that there is no testimony offered showing or tending to show that the defendant below was physically incapable of earning money, are considered, we cannot say that the verdict of the jury is not sustained by sufficient evidence.
 

 The last ground of error assigned is that the plaintiff in error, during the period of time laid in the indictment, was a resident of the state of West Virginia. Now, it affirmatively appears that the child, Naomi Norman, was a resident of Gallia county during the period covered by the indictment, and by virtue of Section 13011, General Code, the venue of such an offense is properly laid in the county wherein the child may be at the time such complaint is made.
 

 
 *229
 
 The decision of this court in
 
 State
 
 v.
 
 Sanner,
 
 81. Ohio St., 393, 90 N. E., 1007, 26 L. R. A. (N. S.), 1093, holds as follows:
 

 “As to some crimes, the physical presence of the accused, at the place where the crime is committed is not essential to his guilt.
 

 “A parent may be guilty of the crime of failing to provide for his minor children, defined by the act entitled, ‘An act to compel parents to maintain their children,’ passed April 28, 1908 (99 Ohio Laws, 228), although he is a resident of another state during the time laid in the indictment, and the venue of the crime is in the county where the child is when the complaint is made.”
 

 We are content with the conclusion reached in the
 
 Sanner case,
 
 and hold it to be applicable in the present instance. A reversal upon this ground is therefore denied.
 

 Upon the whole case we are of the opinion that the plaintiff in error had a fair trial; that his rights were properly safeguarded by the trial court upon the questions arising during the progress of the trial; that the verdict of the jury and the judgment of the trial court are sustained by the law and the evidence; and that the Court of Appeals was right in affirming such judgment. Therefore the judgment of the Court of Appeals should be, and hereby is, affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Wanamaker, Jones, Matthias and Allen, JJ., concur.